UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATHAN STOKES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1241** |
| **TERREBONNE PARISH SHERIFF'S OFFICE,** *ET AL* | **SECTION "C" (2)** |

## ORDER AND REASONS

Before the Court are two motions: (1) Defendants' motion in limine; Rec. Doc. 21; and (2) Plaintiff's motion to strike. Rec. Doc. 27.  Both motions are opposed. Rec. Docs. 23 & 31.  Having considered the record, the memoranda of counsel and the law, the Court PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion in limine and DENIES plaintiff's motion to strike for the following reasons.

## I. BACKGROUND

It is undisputed that Plaintiff began working for the Terrebonne Parish Sheriff's Office ("TPSO") as a patrol deputy in September 2008. Rec. Docs. 1 & 3. Plaintiff states in his complaint that he began a fifteen-month deployment to active military service in Afghanistan in February of 2010, which concluded in April 2011. Rec. Doc. 1 at 3.  He explains that he provided advance notice of his military service to the defendants as required by 38 U.S.C. §4312(a)(1). *Id.* at 4.  The defendants do not dispute that the cumulative amount of time the plaintiff was absent from work as a result of his service in the armed forces did not exceed five years. *Id.* & Rec. Doc. 3 at 8.  Despite this, plaintiff alleges that when he returned to work he was (1) retaliated against by the defendants

1

when they asked him to submit to a psychological evaluation; (2) denied the opportunity to interview for a dog handler position that had a higher salary and better benefits than his current position; and (3) that the position was given to a less-qualified patrol deputy. Plaintiff alleges he was informed that one of the reasons he did not receive the position was that the TPSO could not risk him being deployed again and that plaintiff was "gone while people here were working." Plaintiff alleges that he was terminated without cause on or about December 6, 2011, two days after defendant had been served with plaintiff's USERRA complaint, which plaintiff filed with the U.S. Department of Labor. Rec. Doc. 1 at 3-6. Plaintiff also alleges in his amended complaint that he attempted to apply for a deputy sheriff position with the TPSO on July 11, 2012 and was advised he could not apply because defendants' counsel had recommended that the plaintiff not be rehired. Rec. Doc. 8 at 1. Defendants deny this allegation and assert that plaintiff never attempted to apply for the position. Rec. Doc. 9 at 2.

## II. LAW AND ANALYSIS

### A. Defendants' motion in limine (Rec. Doc. 21)

In defendants' motion in limine, the defendants move to admit: (1) an email, dated April 5, 2012, from DVET Sarah Bierman to DVET Woody Lambert which notes that DVET Bierman "would be closing USERRA case LA-2012-00006-20 G with no merit;" Rec. Doc. 21, Exh. A; (2) a Report of Contact/Attempted Contact, dated April 5, 2012, documenting a telephone call between plaintiff and DVET Sarah Bierman, which states that "evidence attained for the case . . . does not support a violation of USERRA" and that she explained to plaintiff his "rights to a private attorney;" *Id.*, Exh. B; and (3) the "closing letter" dated April 9, 2012 and referenced in both of the preceding documents. *Id.* at 2; *see* Rec. Doc. 23, Exh. F. The defendants assert that the documents should be admitted under both the "business records" (or records of a regularly conducted activity) exception

and the public records exception to the rule against hearsay. FED.R.EVID. 803(6) & 803(8). Rec. Doc. 21 at 3. Defendants also contend that these documents are admissible because employment discrimination investigations are admissible in the Fifth Circuit under the public records exception to the rule against hearsay. *McClure v. Mexia Indep. School Dist.*, 750 F.2d 396, 400 (5th Cir. 1985).

The plaintiff argues that the records are not admissible. Rec. Doc. 23 at 4. Plaintiff claims that the defendants' motion cannot be granted because a custodian or qualified witness must lay a foundation for the documents to be admissible. *Id.* Plaintiff also argues that the records are not admissible under Federal Rules of Evidence 803(6) and 803(8), and that defendants' argument about the admissibility of determinations and findings of fact in employment discrimination investigations is undermined by the Fifth Circuit case *Cruz v. Aramark Services, Inc.* 213 Fed. App'x 329 (5th Cir. 2007). Rec. Doc. 23 at 5.

In *Cruz*, which the Fifth Circuit has determined is not precedent, the Court found that the plaintiff's EEOC file was not admissible in its entirety. 213 Fed. App'x 329 at 332. The Court found that "[t]he business records hearsay exception applies to the EEOC's report and determination, but it does not apply to the underlying material collected during the EEOC investigation." *Id.* It concluded that the individual evidence contained in the file must be admissible in its own right. The *Cruz* Court relied on *Smith v. Universal Services, Inc.*, 454 F.2d 154, 157 (5th Cir. 1972), which holds that an EEOC investigative report consisting of a summary of the charges, a brief review of the facts and the EEOC's finding of probable cause, was admissible under the Federal Business Records Act and therefore constituted an exception to the rule against hearsay. This Court, while following the Federal Rules of Evidence, looks to *Universal Services, Inc.* as precedent. *Id.*

An investigative report detailing the charges, facts and findings of an agency will be admissible. This exception does not provide for admission of the entire investigation file. *McClure*

3

*v. Mexia Independent School District*, 750 F.2d 396, 400 (5th Cir. 1985). Other information from an employment dispute is not automatically excluded, rather its admissibility will be considered separately. *See, e.g., Cruz*, 213 Fed. App'x 329 at 332, *citing McClure*, 750 F.2d at 401.

The email, dated April 5, 2012, from DVET Sarah Bierman to DVET Woody Lambert which notes that DVET Bierman "would be closing USERRA case LA-2012-00006-20 G with no merit," does not represent a report from the Department of Labor on the plaintiff's USERRA claim. Rec. Doc. 21, Exh. A.  The email appears to contain preliminary or interim evaluative opinions, which are not admissible as a public record. *See Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862 (5th Cir. 1998). The email also does not appear to be a record of regularly conducted activity. FED.R.EVID. 803(6).  It is inadmissible hearsay. FED.R.EVID. 802.

The Report of Contact/Attempted Contact is also an interim report.  Rec. Doc. 21, Exh. B. Although the report states that the DVET "explained that the evidence does not support a violation of USERRA," this conclusion was presented as an update on the evidence attained for the case. *Id.* The report records that the DVET would be sending a closing letter explaining the decision. *Id.*  The report appears to detail an ongoing investigation because it records additional information from the plaintiff related to contacting Mr. Dinh and that a person whose name has been redacted "feels that the individuals in management that were interviewed were also untruthful." *Id.*  The letter does not appear to present the agency's report and determination.  Moreover, considering the report's information that the agent would be sending a closing letter explaining the decision, it is unnecessary to submit this report, which lacks trustworthiness as a report of the agency's decision. FED.R.EVID. 803(8)(B).  The report appears to be a record of regularly conducted activity. FED.R.EVID. 803(6). Despite this, it is excluded because its probative value is substantially outweighed by the danger of unfair prejudice and the admission of cumulative evidence involved in submitting an interim report

4

of this type when the same information may be admitted in the final report. FED.R.EVID. 403.

The "closing letter," dated April 9, 2012, is admissible as a report of an investigation. Rec. Doc. 23, Exh. F. It states the agency's findings. *Id.* Defendants have offered that they will obtain a certification from the records custodian of the Department of Labor prior to trial in order to lay a foundation for the document. Rec. Doc. 26 at 4, n.1. The Court finds that plaintiff has not demonstrated a lack of trustworthiness in the letter. Plaintiff's arguments about the information Ms. Bierman used to draft her report go to the weight the jury should give to the document, not its admissibility.

Therefore, defendants' motion in limine is denied as to the first two exhibits the defendants seek to admit, Rec. Doc. 21, Exhs. A & B, and granted as to the third exhibit, the "closing letter," submitted as Rec. Doc. 23, Exh. F.

### B. Plaintiff's motion to strike (Rec. Doc. 27)

The plaintiff moves to strike the report of defendant's expert, Leroy Azlin, and to preclude Mr. Azlin from testifying at the trial. Rec. Doc. 27. Stokes asserts that the expert should be excluded and his report should be struck because his report was untimely produced to plaintiff. *Id.* The defendants oppose the motion. Rec. Doc. 31. Defendants contend that while the expert report was untimely produced, the delay was justified and harmless to the plaintiff. Rec. Doc. 27 at 1. Defendants also explain that they had given notice of the grounds for delay to the plaintiff and that the expert testimony is necessary because it goes to the heart of the case. *Id.* at 5.

The Federal Rules of Civil Procedure determine the steps that must be followed in order to admit a witness to testify at trial. Under Rule 26(a)(2)(A), a party must "disclose to the other parties the identity of any witness it may use at trial to present [expert testimony] under Federal Rule of Evidence 702." The Fifth Circuit has interpreted this disclosure rule to apply to all expert witnesses.

*See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882 (5th Cir. 2004). Unless otherwise stipulated or ordered by the court, the disclosure "must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED.R.CIV.P. 26(a)(2)(B). A party shall not be permitted to use information or a witness for whom it failed to provide a disclosure under Rule 26(a) unless it can show why its failure was substantially justified or is harmless. FED.R.CIV.P. 37(c)(1). A district court has the discretion to exclude expert testimony and evidence if a party does not produce expert reports within the appropriate deadlines. *Id*; *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). A court's discretion to admit an expert and an expert's report when the report is untimely is guided by four factors: (1) the importance of the witness' testimony; (2) the potential for prejudice to the opposing party; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's untimeliness. *See Sierra Club*, 73 F.3d at 572, *citing Bradley v. United States*, 886 F.2d 120, 125 (5th Cir. 1989).

      The Court's Scheduling Order mandated that defendants obtain and deliver written reports of experts to counsel for plaintiff no latter than March 18, 2013. Rec. Doc. 16. Mr. Azlin's expert report was not produced until April 5, 2013. Rec. Docs. 27 at 2 & 31 at 3. Plaintiff alleges that the submission of Mr. Azlin's expert report is harmful because after it was submitted on April 5, 2013 there was insufficient time to depose Mr. Azlin before the discovery deadline on April 16, 2013. Rec. Doc. 27 at 4. The plaintiff also asserts that this is problematic because the deadline for motions in limine related to expert testimony has passed. *Id.* The plaintiff maintains that extending the deadlines would not be an option because of the impending trial date, and that it would object to the continuance of this trial to cure prejudice of the untimely submitted report. *Id.* Additionally, plaintiff claims that there is no justification for defendant's untimeliness. *Id.* at 5. Plaintiff claims that all of

the information Mr. Azlin relied upon in his report was available to defendants before the March 18, 2013 deadline. Rec. Doc. 27 at 5.

Defendants justify their untimely submission of the expert report because Mr. Azlin relied on the deposition testimony of Sheriff Bourgeois and Mr. Simoneaux to draft their report, and a transcript of the deposition testimony was not available until after the expert disclosure deadline. Rec. Doc. 31 at 5. Plaintiffs assert that Sheriff Bourgeois and Mr. Simoneaux were deposed by plaintiff's counsel on March 4, 2013 and March 6, 2013, and that "[d]efendants could have obtained transcripts from these depositions and sent them to Mr. Azlin in advance of the expert report deadline." Rec. Doc. 27 at 5. Despite this claim, defendants represent that they received the transcripts of these depositions after the deadline on March 22, 2013 and March 25, 2013. Rec. Doc. 31 at 3. Defendants also claim that they notified plaintiff's counsel by email that the depositions would not be available until after the expert disclosure deadline, and that after plaintiff's counsel stated that he would need to check with his client, defendant followed up again to find out if the plaintiff had consented to the extension of the deadline. *Id.*

This Court enforces its Scheduling Orders and looks unfavorably at parties missing their deadlines. However, in the present case, the defendants have demonstrated they were substantially justified in submitting a late report because Mr. Azlin did not yet have access to the deposition transcripts. Furthermore, defendants made a good faith effort to get plaintiff's approval and never received an answer as to whether the plaintiff approved of their extension to the deadline for submitting the reports. Defendants have demonstrated that the testimony is important to the case because it evaluates whether the candidate that ultimately received the job for which Stokes had applied was actually better qualified for the position of dog handler. A continuance shall not be granted at this late time in the case. Moreover, the Court finds that it is unlikely the plaintiff will be prejudiced by admission of the report because it had warning that Mr. Azlin would testify. *See* Rec.

Doc. 27 at 4 (stating that defendants identified Mr. Azlin in their November 9, 2012 answers to plaintiff's interrogatories); *see also* Defendant's Amended Witness and Exhibit List. Rec. Doc. 20. While the Court will not extend the deadline to submit motions in limine regarding the admissibility of expert testimony, out of an abundance of caution, it shall allow the plaintiff to depose Mr. Azlin after the discovery deadline. Plaintiff is given leave to depose Mr. Azlin within the next fourteen days.

Accordingly,

IT IS ORDERED that defendants' motion in limine is GRANTED IN PART and DENIED IN PART. Rec. Doc. 21.

IT IS FURTHER ORDERED that plaintiff's motion to strike is DENIED. Rec. Doc. 27.

New Orleans, Louisiana, this 9th day of May, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**